104 579
113 537

## The People v. August Oblaser.

*Criminal law—Receiving stolen property—Sufficiency of evidence— Witnesses—Impeachment—Conduct of prosecuting attorney.*

1. In a prosecution for receiving stolen property (a revolver), knowing it to have been stolen, it appeared that the owner left her house during the afternoon, the doors being locked; that on her return she found her pocket-book, which had contained money, upon the stand, rifled of its contents; that the same evening she missed the revolver from the stand drawer, where it had been kept; that she could not say when she last saw the weapon, but she and her husband testified to having seen it within a few days; that on the arrest of the respondent, 10 days later, a revolver, which the woman identified as hers, was found under his pillow; that he told conflicting stories about

the revolver, one of them being that he procured it from a man whom he knew to have had it a year before, because he was with him when he bought it; that he refused to give his name, and advised the officer to arrest him for stealing the revolver if he thought best. And it is held that the circumstances were sufficient to sustain a conviction.

.2. · Where, on the cross-examination of one of the people's witnesses in a criminal case, a portion of his testimony taken on the preliminary examination is read to him, and he denies so testifying, the testimony, if used for the purpose of impeachment, should be offered in evidence as a part of the respondent's defense.

3. During his argument, the prosecuting attorney, referring to the respondent's counsel and his argument, stated that said counsel had said that the respondent had as good a record as any one in the court-room, and added, " Why don't he show it?" No evidence of good character had been given. And it is held that the statement of the prosecuting attorney was evidently invited by respondent's counsel, who, in referring to the question of good character, went outside of the record.

Error to recorder's court of Detroit. (Chapin, J.) Argued March 1, 1895. Decided April 2, 1895.

Respondent was convicted of the offense of receiving stolen property, knowing it to have been stolen, and sentenced to imprisonment in the State prison at Jackson for three years. Judgment affirmed. The facts are stated in the opinion.

*Turner, Turner & Crawford,* for respondent.

*Allan H. Frazer,* Prosecuting Attorney, and *O. F. Hunt,* Assistant Prosecuting Attorney, for the people.

HOOKER, J.   The respondent was convicted of the offense of receiving stolen property, consisting of a revolver. The owner, a woman, left her house during the afternoon, the doors being locked. On her return she found her pocketbook upon the stand, and money that it had contained was gone. That evening she missed her revolver,

which had been kept in the stand drawer. She could not say when she saw it last, but she and her husband testified to having seen it within a few days. Ten days later, the respondent was arrested, and a revolver was found under his pillow, which complainant identified as hers. The respondent told conflicting stories about it, one of them being that he procured it from a man whom he knew to have had it a year before, because he was with him when he bought it. He refused to give his name, and advised the officer to arrest him for stealing the pistol if he thought best.

It is contended that this did not establish the larceny of the pistol. We think the circumstances were sufficient to sustain a conviction by the jury. The case differs from that of *People v. Montague*, 71 Mich. 318, as will be readily seen by an examination of that case.

On cross-examination, Mr. O'Neil was asked by respondent's counsel if he did not testify upon the examination that he would not swear that the revolver found was the one lost, and that the marks on his were lower down. He admitted the latter, but denied making the former statement. He admitted being sworn, and that the revolver was shown him, and said that he corrected the statement about the screw being lower down. Counsel for the respondent then said:

"I will read your testimony. [Reading:] 'Saw the revolver next when Downey [the officer] brought it to me. This is not the one.'

"*Q.* Did you testify to that?

"*A.* No, sir.

"*Q.* Is that your signature there to that testimony taken in the court below?

"*A.* That is my signature.

"*Mr. Turner:* I introduce this testimony and evidence of the witness taken below. (Mr. Hunt objected, and cross-examination continued.)"

This was not the proper time to offer this evidence for

the purpose of impeachment. It should have gone in, if at all, with the other impeaching testimony upon the same subject, after the respondent's counsel took the case. It is unimportant, however, as the bill of exceptions fails to show exception taken to its exclusion.

During the argument, the prosecuting attorney, referring to counsel for respondent, said:

"He says this man has as good a record as any one in the court-room. Why don't he show it?"

Nothing shows that evidence of good character was given, and counsel for the respondent seems to have so far forgotten himself as to make statements outside of the record. Had the prosecutor replied by saying there was no evidence that he had a good record, no fault could have been found. This was but another way of saying it. It was plainly invited.

The judgment must be affirmed.

The other Justices concurred.