PEOPLE *v.* SCHULTZ.

1. CRIMINAL LAW—CONSPIRACY TO DEFRAUD—FALSE PRETENSES—
EVIDENCE—SUFFICIENCY.

In a prosecution for conspiracy to defraud the city of De-
troit by false pretenses, evidence *held,* sufficient to take
the case to the jury. BROOKE, J., dissenting.

2. SAME—ARGUMENT OF COUNSEL—INSTRUCTIONS—FAILURE TO CALL
CO-CONSPIRATORS.

Argument of the prosecuting attorney commenting on the
failure of defendant to call as witnesses two men who
were jointly indicted with defendant, together with in-
structions by the trial court that the jury could take into
consideration the failure of defendant to call them as
witnesses, *held,* reversible error. STEERE and BIRD, JJ.,
dissenting.

Exceptions before judgment from the recorder's
court of Detroit; Wilkins (Charles T.), J. Submitted
January 17, 1919. (Docket No. 120.) Reargued April
20, 1920. Decided June 7, 1920.

Herman Schultz was convicted of conspiracy. Re-
versed.

*James O. Murfin* and *Hinton E. Spalding,* for ap-
pellant.

*Alex. J. Groesbeck,* Attorney General, *Charles H.
Jasnowski,* Prosecuting Attorney, *Harry B. Keidan,*
Assistant Prosecuting Attorney, and *George E. Nich-
ols,* Special Prosecutor, for the people.

BIRD, J. (*dissenting*). An indictment was returned
by the grand jury of Wayne county against defendant,
G. Lewis Carter and Myron D. White, charging them
with having, on the 20th day of June, 1917, and on
divers other days and times between that date and

September 1, 1917, at the city of Detroit, unlawfully, falsely, deceitfully and fraudulently combining, conspiring, confederating and agreeing together by divers false pretenses and subtle means and devices to obtain and acquire unto themselves of and from the city of Detroit a sum of money, to wit: $38,000, and to cheat and defraud the city of Detroit thereof. Defendant elected to, and did, have a separate trial, at which he was convicted. The proceedings are before us for review on exceptions before sentence.

In order to avoid repetition, a statement of the case will be made in connection with the assignment that the trial court was in error in refusing to direct a verdict for defendant on the ground that the proofs did not make a case for the jury.

1. The case made by the people was, in substance, that the mayor, in September, 1914, sent a communication to the common council calling its attention to the work of the international joint commission appointed for the purpose of inquiring into the pollution of the waters of the Great Lakes by sewage. This communication led to the employment by the city of Charles W. Hubbell, an experienced engineer, to make an investigation of the sewer conditions in Detroit. Mr. Hubbell entered upon the work and after several months of investigation made a report of his work to the council with certain recommendations, among which was one advising the purchase of sufficient land for a pumping station on the low lands lying along Connors creek.

Up to July 1, 1917, Hubbell, the engineer, had indicated no particular location on Connors creek which he desired purchased. It appears that he had concluded in his own mind the desirable location but had disclosed it to no one. Soon after July 1st he took the defendant, by reason of his position as chairman of the sewer committee, to the particular site which

he had selected, showed it to him and advised the purchase of the same. There was a large sign thereon showing it was for sale by Harry W. Leach, a real estate dealer. Several days later Mr. Hubbell saw the defendant and inquired if any action had been taken towards purchasing the tract and the defendant replied that he had it under consideration. Soon after this inquiry, G. Lewis Carter, a lawyer in whose office defendant had desk room, opened negotiations with Leach for the purchase of the premises. These negotiations resulted in Carter's getting an option thereon for $59,000. Carter represented to Leach that he was negotiating for a client named White who desired it for manufacturing purposes. Leach requested Carter to go out and examine the tract, but Carter refused, saying he was satisfied with the location, what he was interested in was the price. As soon as Carter obtained the option he interviewed Hubbell, and advised him that he had a client who had a tract along Connors creek which he desired to sell, and inquired if it would be suitable for his purpose, at the same time submitting to him a sketch and description of the property and fixing the price at $98,000. Upon examination of the description by Hubbell he discovered it was the particular property he had selected, and the property which he had shown to Schultz, the defendant.

Following this, and on July 24, 1917, George H. Fenkell, commissioner of public works, sent a communication to the council asking permission to purchase certain lands in the Connors creek district, describing them, for $98,000. This communication was acted upon at once. Defendant, who was alderman and chairman of the sewer committee, offered a resolution authorizing the department of public works to purchase the premises for the sum of $98,000. This resolution was referred to the sewer committee, of which

defendant was chairman. On July 31st the committee reported to the council that it had the resolution under consideration, that it believed the price was reasonable and recommended the purchase of the lands at that price. This recommendation, under the rules of the council, was laid on the table for one week. At the meeting of August 7th defendant moved that the report be taken from the table. This motion prevailed and the report was referred back to the sewer committee. On August 28th the committee again reported the resolution and recommended that the purchase be made for the sum of $98,000. The resolution was then adopted.

On September 4th Alderman Lodge moved a reconsideration of the vote authorizing the purchase of the premises, but this was lost. At this same meeting, a communication was received from the mayor vetoing the resolution authorizing the department of public works to purchase the property, expressing the opinion therein that all real property purchased for the city should be obtained by condemnation proceedings. An attempt was then made to override the mayor's veto, but the attempt failed and the city attorney was authorized to begin condemnation proceedings to obtain the property.

In explanation of some of the matters stated herein it was shown:

(*a*) That the communication which Fenkell sent to the council asking authority to purchase the premises for $98,000 was prepared either by defendant or at his office and left at Fenkell's office for him to sign. Up to this time Fenkell was not aware of the particular tract selected.

(*b*) That defendant was a real estate dealer and had for some time and up to July 6, 1917, occupied a portion of Carter's office.

(*c*) That defendant saw Leach's sign on the property when Hubbell, the engineer, showed him the prem-

ises, and that both defendant and Carter were well acquainted with Leach.

(d) That Leach would have sold the property to Fenkell for the city for $59,000, the same as he did to Carter.

(e) Testimony was offered tending to show that White was a myth.

As is usual in cases of this character the proofs relied upon to establish the conspiracy were circumstantial. The facts and circumstances shown were ample, if believed, to justify an inference that defendant and Carter were working together in pursuance of a common understanding to purchase the site and resell it to the city at an advanced price and retain the difference for themselves. Of course, it is possible that the several acts of defendant and Carter had no relation to each other, but they are also susceptible of a different inference. Just what inference should be drawn therefrom was a question which was clearly within the province of the jury. They having reached a conclusion thereon adverse to defendant's contention, it must close the inquiry upon this phase of the case.

2. It is further argued that defendant should have had a directed verdict, as a matter of law, because it was not shown that defendant made any false representation of a material fact, or made any agreement to make such representation. We are unwilling to concede that there was no evidence of false pretenses upon the part of the defendant. One may practice false pretenses by act as well as by word. It was said in *People* v. *Clark*, 10 Mich. 310, that "it is not essential that the pretenses by which a fraud is accomplished be expressed in words. Falsehood when deliberately acted is the same as spoken falsehood." To the same effect, see 11 R. C. L. p. 838; 19 Cyc. p. 402.

If the theory of the prosecution be true, defendant acted a lie throughout the entire transaction. He pre-

tended to the council to be acting in the line of his official duty and in the interest of the city which honored him with his trust, whereas he was during all the time acting with his co-conspirators to a common end, to defraud the city of Detroit, and he was using his official cloak to obscure his real purpose. It was the belief among his associate councilmen that he was acting for and in the best interests of the city and discharging his duties as an honest official that secured for him their support in furtherance of his unlawful scheme. As proof of this, had he been perfectly frank with his colleagues and stated to them what his motives were and what he was trying to do, his resolution to purchase the site would have found no support among them.

3. The trial court was requested to instruct the jury that:

"There is no evidence in this case that the city was, or could have been, defrauded because all the evidence agrees that the property was fairly and reasonably worth the sum proposed to be paid. Therefore, your verdict must be 'not guilty.'"

This request was refused and instead the following was given:

"Whether or not any gain was made by the defendant, any loss by the city, or whether any loss could have been sustained by the city if the agreement or sale had been carried out, is immaterial for the actual value of the property is immaterial. The question is, Did Mr. Schultz know, or have reason to believe, that the property could be obtained for the use of the city for a much less sum than $98,000? If he did, then it was his duty to purchase the property at the best possible price. * * * I instruct you that it was the duty of Mr. Schultz, in the capacity of alderman and chairman of the sewer committee, to protect the interests of the city, and if he fraudulently and unlawfully entered into any arrangement with Carter whereby through his knowledge as an officer of the

city and through his power in that capacity, an attempt was made to cheat or defraud the city by paying for the site in question more than was necessary to pay for it, and more than he knew was necessary to pay for it, then he may be found guilty of the conspiracy as charged in this indictment."

The charge of the court upon the question is a correct exposition of the law as applied to the facts of this case and is at the same time a complete answer to defendant's contention as embodied in his request.

4. Because the city charter makes it impossible to enter into a valid contract of this character, without the approval of the board of estimates, and because its approval was never given thereto, counsel argue:

"As it was legally impossible to have made this purchase, how can it be said that a man may be indicted and tried for conspiracy to do that which admittedly could not be done?"

Had defendant been indicted for having defrauded the city out of $39,000, by means of false pretenses, this contention would have some force. When, however, he is indicted for conspiring with others to defraud the city out of $39,000, by means of false pretenses, it is immaterial whether he succeeds in doing so or whether it would have been possible to do so. In order to justify a conviction, it is not necessary to show that the conspiracy was accomplished. *People* v. *Clark,* 10 Mich. 310; *People* v. *Gilman,* 121 Mich. 187 (46 L. R. A. 218).

In the latter case it was observed:

"It is said that the information charged a conspiracy to defraud one who could not be defrauded, because he knew the representations to be false. The conspiracy is complete when it is formed and the guilt or innocence of the conspirators does not depend upon the success of the enterprise."

And it was held in *Ochs* v. *People,* 124 Ill. 399 (16 N. E. 662), that it is immaterial that the accomplish-

ment of the object of the conspiracy was impossible. 8 Cyc. p. 626. This contention must be overruled as being without merit.

5. Complaint is made that the prosecutor violated section 12552, 3 Comp. Laws 1915, when he addressed the jury in his closing argument, as follows:

"But it is up to you, as twelve honest, intelligent citizens, in view of these undisputed facts, and in view of this, that no man has raised his voice to explain away these mysteries that could have been explained, if they were honest. My friend says that he would have a fat chance, with White under indictment, with Carter under indictment, of getting anything out of them. I stated to you a minute ago that every man was presumed to be innocent until he was proven guilty; and if that presumption amounts to one living thing in this country, it amounts to this, that no innocent man need be afraid to go before the court and tell the truth. Isn't that so?

"*Mr. Murfin:* An exception.

"*Mr. Nichols:* No innocent man—I think I am perfectly justified in view of the statement that he would have had a fat chance, and I make no reference to anyone but Carter.

"*The Court:* Your reference was to Carter and White?

"*Mr. Nichols:* My reference was to Carter and this so-called White whom my friend said he could not get anything out of because they were under indictment. And I say, under indictment or not, if Mr. White, in a legitimate way had ascertained or learned of this property, and that the city wanted it, and that he learned of it and actually needed it for manufacturing purposes, no indictment should stand in the way of his coming here and telling the truth."

The prosecutor insists that the argument did not come within the terms of the statute, and further, that he was simply replying to an argument of defendant's counsel who preceded him.

The prosecutor's argument appears on its face to have been prompted by the argument of defendant's

counsel. When counsel for defendant undertook to, and did, explain to the jury why the codefendants were not sworn, and why defendant was deprived of the benefit of their testimony, he thereby opened the door to the prosecutor to make comments on the same subject. Counsel for defendant will not be permitted to lead the prosecutor into forbidden zones of argument and then be heard to complain because he follows. *People* v. *Oblaser,* 104 Mich. 579; *People* v. *Smith,* 106 Mich. 431; *People* v. *Savant,* 112 Mich. 297; *People* v. *Parmalee,* 112 Mich. 291; *People* v. *Singer,* 174 Mich. 361.

But aside from this we are not impressed that the foregoing statute was violated. As soon as objection was raised the prosecutor stated that his argument had no reference to defendant, but was aimed at Carter and White. This then raises the question whether the statute was violated by the prosecutor, in making reference to the fact that the codefendants did not testify in the case.

The statute involved provides:

"* * * That a defendant in any criminal case or proceedings shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." 3 Comp. Laws 1915, § 12552.

The same or similar statutory provisions are in force in many of the States and the construction placed thereon will be helpful in construing our own with reference to this question.

It is said in 12 Cyc. p. 578, that:

"While many cases hold that it is not error for the prosecuting attorney to comment on the failure of the accused to produce certain witnesses, where such witnesses, if produced, would be competent to testify, no comment should be allowed on the absence of a witness not shown to be competent."

In support of this the following cases are cited: *State* v. *Griswold,* 73 Conn. 95 (46 Atl. 829) ; *Frazier* v. *State,* 135 Ind. 38 (34 N. E. 817) ; *State* v. *Seely,* 92 Iowa, 488 (61 N. W. 184) ; *State* v. *Johnston,* 88 N. C. 623; *Wilkerson* v. *State* (Tex. Crim. App.), 57 S. W. 956; *Bruce* v. *State* (Tex. Crim. App.), 53 S. W. 867; *People* v. *McGrath,* 5 Utah, 525 (17 Pac. 116) ; *Halleck* v. *State,* 65 Wis. 147 (26 N. W. 572).

Corpus Juris (Vol. 16, p. 906) has this to say on the question:

"The prosecuting attorney may refer to or comment upon the failure of a codefendant to testify as a witness, although such comment is improper if accused has offered his codefendant as a witness and the latter has availed himself of his privilege and declined to testify,"—citing in support thereof: *People* v. *Ruef,* 14 Cal. App. 576 (114 Pac. 48) ; *People* v. *Ye Foo,* 4 Cal. App. 730 (89 Pac. 450) ; *State* v. *Madden,* 170 Ia. 230 (148 N. W. 995) ; *McElwain* v. *Commonwealth,* 146 Ky. 104 (142 S. W. 234) ; *Davis* v. *Commonwealth,* (Ky), 121 S. W. 429; *State* v. *Mathews,* 98 Mo. 125 (10 S. W. 144, 11 S. W. 1135).

In *McElwain* v. *Commonwealth, supra,* it is held:

A statutory prohibition against comment on failure of accused to testify applies only to defendant on trial, and does not prevent the attorney for the prosecution from commenting on the failure of a codefendant who had demanded a separate trial and was not on trial to testify.

In *State* v. *Madden, supra,* which was a prosecution for conspiracy, it was said:

"The county attorney, in argument, referred to the fact that James Saling, jointly indicted with defendant on trial, did not become a witness in the case. This was objected to, and the court held that section 5484 of the code applies only to the defendant then on trial. It seems to have been so decided by this court. *State* v. *Hogan,* 115 Iowa, 455, 460 (88 N. W. 1074)."

The question has also received the attention of this court. In *People* v. *McGarry*, 136 Mich. 316, McGarry was separately indicted for participating in a fraudulent scheme with others who were also under indictment. In addressing the jury the prosecutor said:

" 'Now, gentlemen, there is Mr. Cummings, there is Mr. Taylor. If Cameron and Garmon don't tell the truth about that interview, why didn't they bring Cummings and Taylor to testify about it?'

"And again Mr. Ward said:

" 'Now, gentlemen of the jury, you can see why it is these men are not called. Even the deposition of Mr. Gates is not here any more.' "

This court, in holding the comments were not error, said:

"There are many cases which justify comment upon the failure of a party to produce particular witnesses, and the rule extends to criminal cases. 3 Rice on Evidence, 29; *State* v. *Ward,* 61 Vt. 153 (17 Atl. 483). It is not an unqualified right, and depends upon the circumstances of the case. We think it applies to a deposition taken by the party and not used, and to accomplices and other witnesses within their control, or with whom they are, or have been, closely associated, especially where such witnesses are in a position to speak on matters damaging to such party, already in evidence."

The question was before the court in *People* v. *O'Brien,* 68 Mich. 468. In that case the prosecuting attorney commented on the fact that defendant did not produce his father who might have contradicted certain evidence which was admitted. This court held that it was error but put it upon the ground that the testimony to which the prosecutor referred was erroneously admitted.

The question was referred to in *People* v. *Lay,* 193 Mich. 17, 32 (L. R. A. 1917B, 608), where Lay, Jr., Lay, Sr., and one Palmer had been indicted for embezzlement. Lay, Jr., was on trial. The other de-

fendants were called but refused to testify. The argument of the prosecuting attorney commented on this as well as making certain references to the failure of the defendant to testify. This was held error. In holding it as such, Mr. Justice BROOKE said:

"In all these cases remarks of the prosecuting attorney with reference to the failure of the accused to take the stand were held to constitute reversible error. In the case at bar the record discloses no remarks on the part of counsel for respondent, which would tend to excuse or justify the criticism of the prosecuting attorney. *The statute does not prohibit reference to the fact that witnesses other than the accused have failed to testify,* though in our opinion such reference might well have been omitted."

But it is argued that the prosecution would have had no right to call upon either Carter or White to be sworn, and put them upon their refusal, and the case of *People* v. *Van Alstine,* 57 Mich. 69, is cited in support thereof. The real question determined in that case was that "where parties are jointly indicted or informed against, and one chooses a separate trial, he cannot *force* a co-respondent to testify without his consent or request." This deals with his qualification and not with his privilege, which was afterwards commented upon. What was said therein on the question of privilege was afterwards overruled by the *McGarry Case, supra,* but if there be any doubt as to this the doubts must be dispelled by the more recent case of *People* v. *Maloy,* 204 Mich. 524, wherein the precise question was determined adversely to defendant's contention. In the latter case the prosecutor called a co-defendant who was not upon trial, and put her upon her refusal. It was complained of by defendant in the following language:

"Why did the prosecutor indorse upon the information the name of Jessie Emmons, and call her as a witness on behalf of the people? She was complained

against with the respondent, although they were informed against singly. He knew that she would not take the stand and give testimony favorable to the people. * * * It was done so questions might be asked of her before the jury and compel her, or her counsel, to make a claim of privilege. This would, and did, prejudice the jury."

This court held that the conduct of the prosecuting attorney complained of in this respect was not reversible error. *Grimm* v. *People,* 14 Mich. 300, the other case relied upon, has no application because it was written before the amendment to the statute in 1881. Our conclusion is that the comments of the prosecutor complained of are not within the statute, and that the statute applies only to the defendant, or defendants, on trial.

6. The trial court, while instructing the jury, made the following reference to the absence of the codefendants:

"You are simply to consider the facts and consider the results of these facts as you arrive at them yourselves. You can take into consideration all the facts, all the evidence, as for instance, the failure of the principals, Carter and White, if you consider that as material, to be here in this case."

Under this instruction the jury were at liberty to draw unfavorable inferences against either the prosecution or the defendant for the absence of Carter and White. The first duty of the jury under the instruction was to determine whether the failure of Carter and White to be in attendance at the trial was material; if they concluded it was material, they were at liberty to draw unfavorable inferences against the prosecution for its failure to produce them, if they were within the jurisdiction of the court. *State* v. *Smallwood,* 75 N. C. 104. On the other hand, if the jury believed Carter and White could have explained the suspicious circumstances with which defendant

was confronted at the trial, they had a right to consider his failure to produce them, if within reach, in connection with the other testimony in the case, in determining the question of his guilt. This conclusion is supported by many text books and reported cases. *People* v. *Hovey,* 92 N. Y. 554; *Gordon* v. *State,* 33 N. Y. 501; *Commonwealth* v. *McMahon,* 145 Pa. St. 413 (22 Atl. 971); *United States* v. *Schindler,* 18 Blatchford, 227; *Taylor* v. *Commonwealth,* 90 Va. 109 (17 S. E. 812); *Hawaii* v. *Anderson,* 10 Hawaii, 252; *State* v. *Rosier,* 55 Iowa, 517 (8 N. W. 345); *State* v. *Cousins,* 58 Iowa, 250 (12 N. W. 281); *People* v. *Dyle,* 21 N. Y. 578; *State* v. *McAllister,* 24 Me. 139.

This rule was applied in *State* v. *Greve,* 17 Kan. 458. The defendant was informed against for grand larceny. The testimony tending to show his guilt was circumstantial. The trial court charged the jury as follows:

"The jury should not find the defendant guilty because he may have no evidence to show his whereabouts at the time the offense charged is alleged to have been committed, nor to show where or from whom he received any of the money spoken of by witnesses. Nor will they presume that his character is bad, simply because he has offered no testimony of his good character. But where evidence which would rebut or explain certain facts and circumstances of a grave and suspicious nature, is peculiarly within the defendant's knowledge and reach, and he makes no effort to procure that testimony, the jury may very properly take such fact into consideration in determining the prisoner's guilt or innocence. But no inference of guilt is to be drawn from the omission of the defendant and his wife to testify."

Mr. Justice Brewer, in speaking for the court, said:

"The special objection of appellant is, of course, to the next to the last sentence. It seems to us that that clause is only a recognition of a well understood principle of human action. The instinct of self-preserva-

tion impels one in peril of the penitentiary to produce whatever testimony he may have to deliver him from such peril. Every man will do what he can to shield himself from the disgrace of a conviction of crime, and the burden of punishment. We all know this. We all expect it. Whenever, therefore, a fact is shown which tends to prove crime upon a defendant, and any explanation of such fact is in the nature of the case peculiarly within his knowledge and reach, a failure to offer an explanation must tend to create a belief that none exists. Will not a man, who can, explain that which unexplained will stamp him a criminal and consign him to the felon's cell? The criminal law furnishes in its rules more than one illustration of this principle. The possession of recently stolen property casts upon the possessor the duty of explaining such possession. Why? Because the fact and manner of acquiring that possession are peculiarly within his knowledge and reach, and the instinct of self-preservation will compel him to give an explanation thereof consistent with his innocence, if any such explanation exists."

The rule was stated in *Doty* v. *State*, 7 Blackf. (Ind.) 427. In that case the trial court charged the jury:

"That if the defendant has omitted to avail himself of evidence within his reach, by which he might have repelled that which was offered to his prejudice, his omission to do so supplies a strong presumption that the charge is well founded."

The appellate court held this was error because it made the presumption one of law rather than one of fact. After doing so, the rule we are considering was very clearly stated by the court:

"It is undoubtedly true, that when circumstances are proved which induce a strong suspicion of the prisoner's guilt, but which, if untrue, it is manifest he can disprove, or, if reconcilable with his innocence, he can explain, and he fails to disprove or explain them, the jury are authorized to draw from such failure a forceable inference against him. 2 Starkie on

Evidence, 937. But this inference is merely a presumption of fact, and does not constitute a presumption of law to be given by the court to the jury as a fixed and binding rule of jurisprudence. The failure is a circumstance which, like any other circumstantial evidence, the jury are to weigh, and of the weight and tendency of which they are the sole judges."

These cases are illustrative of the rule and show its application. They are supported by all of the cases cited. It will be noted that the instruction complained of is clearly within this rule. The recorder mentioned neither of the parties but left the jury to determine whether any inferences were to be drawn, and, if so, against whom. In view of the fact that both counsel had argued the question to the jury, each side drawing different inferences, it was fitting that the court should refer to it as he did, and no error was committed in so doing.

We are impressed from the whole record that the defendant had a fair and impartial trial. The charge of the court was fair, able and instructive, and we are of the opinion that no errors are alleged which call for a reversal of the case.

The judgment of conviction should be affirmed.

STEERE, J., concurred with BIRD, J.

BROOKE, J. I do not agree with the conclusions reached by my Brother BIRD in this case. The indictment charges a conspiracy to defraud the city of Detroit of a sum of money by "false pretenses, subtle means and devices." It is claimed for defendant that there was no evidence that any false pretenses were used or agreed to be used and that, therefore, a verdict should have been directed for the defendant.

The first question, then, for determination, is whether the use of a false pretense is an essential element of the crime, conspiracy to perpetrate which the defendant is charged. The indictment is for a criminal

conspiracy.  A criminal conspiracy (other than a conspiracy to accomplish a lawful purpose by unlawful means) is a conspiracy to commit any act which either at common law or by statute is a crime.  Under our statute, which is declaratory of the common law (3 Comp. Laws 1915, § 15320), it is made a crime to defraud another of his property by use of any of the means which the statute specifies.  It will be noted that the distinctive characteristic of all those means is that they involve an actual misrepresentation of fact.  It is not a crime to defraud another of his property, if the fraud be accomplished in any way not mentioned in the statute—that is, by any method that does not involve a misrepresentation of fact.  Such a misrepresentation is a false pretense.  As the use of a false pretense is of the essence of the consummated crime, an agreement to employ some false pretense in order to accomplish that crime is an essential element in a criminal conspiracy to defraud by false pretenses. The use of the words "subtle means and devices" in the indictment cannot enlarge the statute.  They are mere surplusage.  These principles are clearly enunciated in the following cases: *Alderman* v. *People,* 4 Mich. 414; *People* v. *Barkelow,* 37 Mich. 455.  It is, therefore, necessary not only to charge (in an indictment for defrauding by false pretenses) the use of false pretenses, but to introduce proof of such use; and when the charge is one of conspiracy to defraud by false pretenses, there must be proof of an agreement to defraud by such use of false pretenses.

It is not claimed that there is any direct evidence of an agreement to use false pretenses in the present case, and, unless there is some evidence that some false pretense was actually made, from which an antecedent agreement might fairly be inferred, a verdict should have been directed for defendant.  There is no evidence that there was made to any of the officers or

agents of the city of Detroit any misrepresentation of the facts calculated to effect or promote the sale to the city of the property which, according to the theory of the people's case, defendant and his associates had schemed to sell to the city. In his brief upon rehearing, the special prosecutor is at much pains to point out what he conceives to be evidence of conduct on the part of the defendant which indicates his use of false pretenses, by act, if not by word; and this view seems to have found expression in the opinion of my Brother BIRD. It is, I think, extremely doubtful whether the acts relied upon are such as could fairly be said to support the inference indulged in; but whether this be true or not, it does not at all meet the point in issue, for the court charged the jury:

"It is not necessary in considering this question of conspiracy charged in the indictment in this case to find that any false pretenses were actually involved. In other words, that the defendant or any alleged co-conspirator made a false representation of a material fact to the city of Detroit or to someone in its behalf, or that the said city of Detroit or someone in its behalf relied upon these so-called false pretenses, to the damage of it, the said city."

This instruction was, I think, erroneous under the authorities cited and cannot be regarded as without prejudice, even if it be conceded that the proofs adduced were such as to warrant a jury in finding that defendant had been guilty of acts indicating use of false pretenses. No agreement to use such pretenses was shown and the jury were instructed that the actual use of such pretenses was unnecessary to support conviction.

The prosecuting attorney, in his argument to the jury, commented on the failure of the defense to call two men who were jointly indicted with the defendant as co-conspirators, and the court instructed the jury that they could take into consideration the failure

of the defendant to call these men as witnesses. I am of the opinion that this was reversible error under the authority of *Grimm* v. *People*, 14 Mich. 300. The holding in this case is rested on sound reason, because the defendant on trial has no right to call as witnesses those who are jointly indicted with him. It is the claim of the prosecution that this holding was modified by the decision in the case of *People* v. *McGarry*, 136 Mich. 316, where it was held that the prosecutor might properly comment upon the fact that the defendant failed to call accomplices to testify in his behalf. It is to be noted, however, that in the *McGarry Case*, the men whom the defendant had not called as witnesses, and upon whose absence the prosecutor commented, were not indicted with him. It is, therefore, not in point in the case at bar.

The verdict should be set aside and a new trial ordered.

FELLOWS, J. I agree with Justice BIRD that the trial judge correctly overruled defendant's motion for a directed verdict. I agree with Justice BROOKE that the argument of the prosecutor, taken in connection with the charge of the court on the subject given at the request of the prosecution, constitutes reversible error.

MOORE, C. J., and STONE and CLARK, JJ., concurred with FELLOWS, J.

SHARPE, J. I concur in reversing this case for the error pointed out by Mr. Justice FELLOWS.

I am unable to agree with Mr. Justice BROOKE as to there being reversible error in the charge of the court relative to false pretenses. Immediately following the language quoted by him, the trial judge said to the jury:

"Most of this is absolutely immaterial, so far as

the charge here is concerned. This charge is, not that these things were actually accomplished, but simply that the defendant joined in a conspiracy with the others named to accomplish them, and that one or more of them did an overt act in the attempt to carry out the understanding, in this instance, to have the city purchase the property at a price higher than that at which the defendant at the bar knew that it could be purchased for, and so knowingly used his official position in agreement with the others to attempt illegal gain. It makes no difference that such gain was not made. The conspiracy is complete if the agreement to gain by fraud was made, and one of the parties took some step, some act to carry out that agreement. * * *

"After all, gentlemen, since I have charged you at some length, it seems to me the question for you is really a simple one. The indictment, and also the quotations from legal authorities in technical phraseology may be confusing; but it seems to me that, devoid of all technicalities, the question for determination is simply, Did the defendant at the bar combine with one Carter and any one else, to use his knowledge of the desire of the authorities of Detroit to acquire the site on Connors creek, the influence of his position to forward the sale of the site desired, and did he and Carter agree together to push through that sale, if possible, at a figure more than that at which the defendant Schultz knew that it could be acquired at, and did either party to the conspiracy, if there was such a conspiracy, and if you are satisfied of its existence beyond a reasonable doubt, do anything to forward that scheme, if there was such a scheme?"

In view of these instructions, and of the charge taken as a whole, I am convinced that the jury were in no way misled by the instruction complained of into believing that it was not necessary to find the defendant had either by act, word or deed used false pretenses in an effort to bring about the sale of such property.