### MICHIGAN NATIONAL BANK *v.* MARSTON

1. FRAUD—MATERIAL FACT—DISCLOSURE.
   The defendant by remaining silent as to the damaged condition of a car he was applying for a loan on, thus allowing the bank which loaned him the money to assume that the car was in good condition, committed a fraud.

2. FRAUD—MATERIAL FACT—DISCLOSURE.
   Failure to disclose a material fact necessary to prevent a false impression is as much a fraud as positive misrepresentation; it is not essential that the pretenses by which a fraud is accomplished be expressed in words.

3. FRAUD—ACTIONABLE FRAUD—ELEMENTS.
   Actionable fraud exists, as a general rule, where it appears (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it

REFERENCES FOR POINTS IN HEADNOTES
[1] 37 Am Jur 2d, Fraud and Deceit §§ 146, 147.
[2] 37 Am Jur 2d, Fraud and Deceit §§ 177, 178, 181.
[3, 4] 37 Am Jur 2d, Fraud and Deceit §§ 12–19.
[5] 41 Am Jur, Pledge and Collateral Security §§ 99–102.
  21 Am Jur 2d, Creditors Bills §§ 55–57.
[6] 41 Am Jur, Pledge and Collateral Security §§ 78–89.
[7] 15 Am Jur 2d, Commercial Code §§ 82, 84, 85, 87.
[8] 15 Am Jur 2d, Chattel Mortgages §§ 213, 238.
[9] 15 Am Jur 2d, Chattel Mortgages §§ 123, 126.
[10] 15 Am Jur 2d, Chattel Mortgages §§ 117, 118, 122, 133.
[11, 12] 15 Am Jur 2d, Chattel Mortgages §§ 118, 119, 120, 122.
[13] 7 Am Jur 2d, Automobiles and Highway Traffic § 36.
[14] 15 Am Jur 2d, Chattel Mortgages § 206.

was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that the plaintiff thereby suffered injury.

4. Fraud—Actionable Fraud—Elements—Standard of Proof.
   All of the elements of fraud must be proved with a reasonable degree of certainty and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

5. Creditors' Suit—Security Interest—Effect on Debt.
   The existence of a security interest in no way affects the existence of the debt; the security interest merely provides the secured party with an immediate source of recovery in addition to the standard remedies of the unsecured creditors.

6. Chattel Mortgages—Sale—Debtor's Liability—Deficiency.
   The debtor remains fully liable for any deficiency in his debt after the proceeds of a sale of the collateral are applied to the debt (MCLA § 440.9504[2]).

7. Creditors' Suit—Remedies—Uniform Commercial Code—Intent.
   The Uniform Commercial Code, as adopted in the state, was intended to broaden the options open to a creditor after default rather than to limit them under the old theory of election of remedies; the rights and remedies of creditors are cumulative (MCLA §§ 440.9501[1], 440.9503, 440.9504; 440.9502).

8. Chattel Mortgages—Sale of Collateral—Suit on Note—Requirements.
   Plaintiff bank, a secured creditor of the defendant, holding title to the defendant's car, the collateral, was not required to dispose of the collateral before bringing suit for the balance owing on the note (MCLA §§ 440.9501[1], 440.9504).

9. Chattel Mortgages—Debtor's Rights—Possession.
   A creditor cannot deprive the debtor of the possession and use of the collateral for an unreasonable length of time and not apply to asset or proceeds from its sale toward liquidation of the debt (MCLA § 440.9504[1]).

10. Chattel Mortgages — Default — Creditor's Possession —Restriction.
    A creditor may not take possession of the collateral if he never intended to dispose of the collateral, because the

debtor, during the time of the creditor's possession, may
have been able to make profitable use of the asset or may
have gone to far greater lengths than the creditor to sell
the collateral (MCLA § 440.9504[1]).

11. CHATTEL MORTGAGES—CREDITOR'S DUTIES—DISPOSITION.

A creditor, once he has possession of the collateral after default,
must act in a commercially reasonable manner toward sale,
lease, proposed retention where permissible, or other disposi-
tion; if disposition is not feasible, the assets must be re-
turned, still subject, of course, to the creditor's security in-
terest (MCLA § 440.9504[1]).

12. CHATTEL MORTGAGES—DEBTOR'S RIGHTS—DISPOSITION.

A debtor has a right of recovery for injuries resulting from
the creditor's failure to act in a reasonably commercial
manner to sell, lease, retain where permissible, or otherwise
dispose of the collateral the creditor has taken possession of
on default (MCLA § 440.9501[1]).

13. CHATTEL MORTGAGES — AUTOMOBILES — POSSESSION — CERTIFI-
CATE OF TITLE.

Possession of a vehicle's certificate of title by the secured credi-
tor deprived the debtor of the use of the car, the collateral,
as effectively as would have physical possession of the car.

14. CHATTEL MORTGAGES—ELECTION OF REMEDIES—AUTOMOBILES—
CERTIFICATE OF TITLE.

Secured creditor's possession of the certificate of title of an
automobile, the collateral, did not result in the creditor's
election of remedies where the title was intended only to
be a method of allowing plaintiff secured creditor to retain its
security interest after bankruptcy and not a method of forcing
an election of remedies, the plaintiff did not have physical con-
trol of the car, and the plaintiff did not indicate an intention
to exercise its right of retention of the collateral.

Appeal from St. Clair, Halford I. Streeter, J.
Submitted Division 2 June 4, 1970, at Detroit.
(Docket No. 7358.)   Decided December 10, 1970.

Complaint by Michigan National Bank against
Edward J. Marston for the amount due on a note.
Judgment for plaintiff.   Defendant appeals.   Af-
firmed.

*Walsh, O'Sullivan, Stommel, Sharp & Beauchamp,* for plaintiff.

*Atkins, Drillock & Keyes,* for defendant.

Before: J. H. GILLIS, P. J., and LEVIN and BOR-RADAILE,* JJ.

BORRADAILE, J. Defendant is an insurance man who, as a sideline, purchased damaged automobiles, repaired them, and then resold them. In April 1966, he purchased a 1965 Imperial convertible, the interior of which had been completely gutted by fire but was otherwise in excellent condition. During the negotiations for the purchase he called the plaintiff's installment loan department in order to find out the loan value of a 1965 Imperial. The supervisor gave the loan value as $3,000, but the defendant did not mention the condition of the car at the time of the call or later when the loan was executed. Defendant purchased the car for $1,350.

Subsequent to signing the 90-day note and giving the bank a security interest in the car, defendant was involved in an automobile accident and hospitalized for an extended period. Ultimately, he went into bankruptcy. In September 1966, when the note had not been paid, the bank learned that the car was in storage and that the garage owner was demanding $600 in storage fees. In December 1966, the bank learned that the car was damaged when defendant bought it.

In January 1967, the trustee in bankruptcy released the vehicle title to the car to the bank. At this point Michigan National Bank tried to sell the car to three dealers who dealt in repossessed and damaged cars. The only offer was from the garage

---

* Circuit judge, sitting on the Court of Appeals by assignment.

owner for $500 but this offer was turned down because he was a poor credit risk. The bank brought suit on the note in October 1967, and the case was heard in September of 1968.

The trial court, sitting without a jury, determined that defendant's loan was obtained under false pretenses and was, therefore, not discharged in the bankruptcy proceedings held in the United States District Court for the Eastern District of Michigan. The trial court further determined that the actions of the bank in obtaining title to the car and in attempting to sell it were commercially reasonable under the provisions of the Uniform Commercial Code, MCLA § 440.9504 *et seq.* (Stat Ann 1964 Rev § 19.9504 *et seq.*), because the bank never obtained possession of the car although it did have the certificate of title.

This appeal is predicated on the above two holdings. Should the appeal fail, defendant asks that the title to the vehicle be immediately transferred to him pursuant to the trial court opinion. This order was not included in the original judgment.

# I

The initial question is whether defendant's debt was discharged in the bankruptcy proceedings. The Federal Bankruptcy Act (11 USCA § 35) provides:

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as    *    *    *    (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused

to be made or published in any manner whatsoever with intent to deceive."

At trial and again on appeal defendant contends that because he never intended other than to repay the loan that there was no fraud present and, therefore, the debt was discharged in bankruptcy. That is not the point at which the transaction was fraudulent on defendant's part. The fraud was committed when defendant, by his silence, allowed the bank to assume that the loan was being made on a used car in good condition. Failure to disclose a material fact necessary to prevent a false impression is as much a fraud as positive misrepresentation. It is not essential that the pretenses by which a fraud is accomplished be expressed in words. Falsehood when deliberately created is the same as a spoken falsehood. *People* v. *Vida* (1966), 2 Mich App 409, 414; *People* v. *Schultz* (1920), 210 Mich 297, 301; *People* v. *Clark* (1862), 10 Mich 310.

In *A & A Asphalt Paving Company* v. *Pontiac Speedway, Inc.* (1961), 363 Mich 634, 639, the Court quoted a definition of fraud:

"The general rule is that to constitute actionable fraud it must appear: (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, all of them must be found to exist; the absence of any one of them is fatal to a recovery."

That these criteria are met is amply supported by the record. Not only did defendant make a material

misrepresentation by his silence, but plaintiff acted in reliance on this omission and suffered injury thereby. *Papin* v. *Demski* (1969), 17 Mich App 151, affirmed, (1970) 383 Mich 561.

## II

As the debt was not discharged in the bankruptcy proceedings, we next consider the question of the propriety of the bank's actions under Article 9 of the Uniform Commercial Code. The basic issue raised is whether the bank, having a security interest in the car and holding title to the car after bankruptcy, was required to dispose of the collateral before bringing suit for the balance owing on the note. This is a question of first impression.

The rights of the parties following default are set out in part 5 of article 9. It is defendant's position that under MCLA § 440.9505(1) (Stat Ann 1964 Rev § 19.9505[1]), plaintiff was required to dispose of the car under MCLA § 440.9504 (Stat Ann 1964 Rev § 19.9504) which in turn provides *inter alia* for the sale of collateral by secured parties.

MCLA § 440.9505(1) (Stat Ann 1964 Rev § 19.9505 [1]) states in pertinent part:

"If the debtor has paid *60% of the cash price in the case of a purchase money security interest in consumer goods or 60% of the loan in the case of another security interest in consumer goods,* and has not signed after default a statement renouncing or modifying his rights under this part *a secured party who has taken possession of collateral must dispose of it under section 9504,* and if he fails to do so within 90 days after he takes possession the debtor at his option may recover in conversion or under section 9507(1) on secured party's liability." (Emphasis supplied.)

The proofs below establish that defendant made no payments at any time on the note. Moreover, defendant has never alleged that he paid "60% of the cash price * * * or 60% of the loan". As the code clearly intends such payment to be a condition precedent to the operation of MCLA § 440-.9505(1), *supra,* we consider the section to be irrelevant to the instant case.

It is of course basic law that the purpose of collateral is to secure the creditor and increase his chance of recovery in the case of default. The existence of a security interest in no way affects the existence of the debt. It merely provides the secured party with an immediate source of recovery in addition to the standard remedies of an unsecured creditor. Thus, for example, should a sale take place under MCLA § 440.9504(2) (Stat Ann 1964 Rev § 19.9504[2]), the debtor remains fully liable for any deficiency after the proceeds are applied to the debt.

While Article 9 specifies a number of rights for the secured party,[1] MCLA § 440.9501(1) (Stat Ann 1964 Rev § 19.9501[1]) provides "the rights and remedies referred to in this subsection are cumulative." In discussing this point Professor Steinheimer has written:

"The code contemplates considerable flexibility in the default procedures which can be used by the secured party. He can (1) proceed under part 5 of article 9, (2) proceed under appropriate provisions of the security agreement and (3) proceed as a judgment creditor. These procedures are cumulative and may be employed without danger of elec-

---

[1] The remedies include taking possession after default (MCLA § 440.9503 [Stat Ann 1964 Rev § 19.9503]), sale of collateral (MCLA § 440.9504 [Stat Ann 1964 Rev § 19.9504]), and objection to retention of collateral (MCLA § 440.9505[2] [Stat Ann 1964 Rev § 19.9505(2)]).

tion of remedies." MCLA § 440.9501, Practice Commentary, by Roy L. Steinheimer, Jr.

See also *Olsen* v. *Valley National Bank of Aurora* (1968), 91 Ill App 2d 365, 371 (234 NE2d 547, 550, 5 UCC Rptr 268, 270) where the court notes:

"The majority rule, including Illinois, is founded on the rationale that a creditor is able to pursue any one of a number of remedies against a debtor until the debt is satisfied."[2]

We, therefore, conclude that the intent of the code was to broaden the options open to a creditor after default rather than to limit them under the old theory of election of remedies.

As the facts of the instant case illustrate, defendant's argument, if accepted, could reduce a secured creditor to a position less favorable than an unsecured creditor. Here the collateral was placed by defendant in the physical control of a garageman, resulting in a lien superior to plaintiff's (MCLA § 570.301 [Stat Ann 1965 Rev § 9.1711] MCLA § 440-.9310 [Stat Ann 1964 Rev § 19.9310]) and for an amount quite possibly in excess of the value of the car. If plaintiff were required to sell the collateral, he would have to first pay the garageman or file suit to challenge the propriety of the claim. In either event plaintiff would effectively be increasing the amount owed it by a debtor who has already defaulted and whose assets have been greatly reduced by bankruptcy. We do not believe that the code intended such a strained result.[3]

---

[2] *Cf. Frank Briscoe Co., Inc.* v. *Suburban Trust Co.* (1968), 100 NJ Super 431 (242 A2d 54, 5 UCC Rptr 271) where the court held that a creditor was not required to seek satisfaction from security but rather could first employ the banker's right of set-off.

[3] While MCLA § 440.9501[1] (Stat Ann 1964 Rev § 19.9501[1]). specifically places the duties of MCLA § 440.9207 (Stat Ann 1964 Rev § 19.9207, on the secured party when the debtor, rather than

### III

This does not mean, however, that the bank owes no duties to defendant with respect to the collateral. (See also, MCLA § 440.9207 [Stat Ann 1964 Rev § 19.9207]). It would be unfair to allow a creditor to deprive the debtor of the possession and use of the collateral for an unreasonable length of time and not apply the asset or the proceeds from its sale toward liquidation of the debt. Moreover, it would be equally unfair to allow a creditor to take possession at all, if the creditor never intended to dispose of the security. For during the period that the debtor is deprived of possession he may have been able to make profitable use of the asset or may have gone to far greater lengths than the creditor to sell. Once a creditor has possession he must act in a commercially reasonable manner toward sale, lease, proposed retention where permissible, or other disposition. (MCLA § 440.9504[1] [Stat Ann 1964 Rev § 19.9504(1)].) If such disposition is not feasible, the asset must be returned, still subject, of course, to the creditor's security interest. To the extent the creditor's inaction results in injury to the debtor, the debtor has a right of recovery. (See MCLA § 440.9501[1] [Stat Ann 1964 Rev § 19.9501 (1)].)

In the instant case plaintiff did not have physical possession of the vehicle. However, it did have title, which, under the circumstances, deprived defendant of the use of the car as effectively as physical possession. Thus, plaintiff owed defendant those duties outlined above.[4]

---

the creditor, has created the lien by placing the collateral in storage, the creditor does not have the duty to pay the expense. A debtor may not unilaterally create such an obligation.

[4] The defendant requests that the title for the vehicle be transferred to him. As we have already held above that a creditor must return collateral it chooses not to dispose of toward liquidation

It is worth noting, however, that the fact that plaintiff held title did not result in an election of remedies. The title was intended only to be a method of allowing plaintiff to retain its security interest after bankruptcy and not a method of forcing an election of remedies. The plaintiff held title in only the narrowest sense of the word and neither had physical control of the car nor indicated an intention to exercise its right of retention of the collateral.

## IV

In the instant case there was no evidence adduced below tending to substantiate either that plaintiff acted in any way other than a commercially reasonable manner or that defendant suffered a loss by plaintiff's failure to sell or return title. This Court will not assume unreasonableness or the existence of a loss where neither has been alleged or proven.

Affirmed. Costs to appellee.

Judge LEVIN concurs in parts I, II and IV of the opinion but is not prepared to join in some of the observations in part III and hence does not join in that part.

---

of the debt, or be subject to liability, presumably this question will be satisfactorily resolved without further discussion on our part.