THEO H. DAVIES & CO., LTD.,
dba PACIFIC MACHINERY, Plaintiff

v.

PACIFIC DEVELOPMENT CO., LTD., FONOTI
PATRICK REID, and YOSHIHISA SATO, Defendants

High Court of American Samoa
Trial Division

CA No. 112-87

October 2, 1987

Before REES, Chief Justice, TAUANU'U, Chief Associate Judge, and OLO, Associate Judge.

Counsel: For Plaintiff, William Reardon
         For Defendants, Frank Swett

On motion for preliminary injunction:

### I. Facts

Plaintiff sold defendant Pacific Development Co. five pieces of heavy machinery for about $300,000. The machinery was to have been used at a facility defendant planned to operate in Western Samoa. Under the terms of a retail installment agreement, defendant paid an initial sum of $80,000 and was to complete payment of the remainder plus interest with eighteen subsequent installments. The debt was secured by an agreement identifying as collateral two used pieces of machinery owned by defendant and "all other assets of Debtor." (Oddly enough, the agreement specifically identifies as collateral only these two pieces of machinery; it does not mention the machinery that was the subject of the contract.)

Shortly afterward there was a change of government in Western Samoa and it became apparent

that defendant would not be permitted to operate the facility for which the machinery had been purchased. After a series of letters and discussions between the principals it was agreed that this machinery (which had been shipped from Hawaii to Apia, Western Samoa, but had not been removed from the dock) would be returned to the plaintiff. Defendant's version of this agreement is that the sale was in effect being rescinded and that plaintiff was to return the $80,000 down payment less the amounts it had spent for shipping and other costs associated with the transaction. Plaintiff contends that it retained the right to receive the full purchase price and that the machinery was returned only as partial security for that right.[1]

Plaintiff put the machinery into storage in American Samoa. It has not been resold and has apparently not been advertised for sale in American Samoa or elsewhere. Plaintiff has submitted an estimate to the effect that the machinery that was the subject of the contract is now worth only about

---

[1]. The evidence for defendants' version of this transaction was the testimony of defendant Reid. Plaintiff presented no testimony and no affidavits other than one from its attorney stating that he is "aware of some of the details of the transaction herein on the basis of conversation with a local representative of the Pacific Machinery."

Plaintiff has also submitted a copy of a letter dated several months after the machinery was returned. Although this letter does not directly refer to any discussions that took place between the parties concerning the return of the machinery, it does state that "plaintiff will proceed with the sale" of the machinery and recover the balance of the purchase price from defendants. The last two paragraphs of the letter purport to state the rights and obligations of both parties, and resemble a draft of a bilateral agreement more than a letter from one party to another. The letter was prepared for the signature of the plaintiff's Vice President-Comptroller and for "acknowledgment" by the defendants. The copy we have bears no trace of a signature by anyone, and we have no evidence about whether it was sent or received.

$90,000. It appears that the machinery has been severely damaged after its .repossession by the plaintiff, by exposure to the weather and perhaps also by vandalism. No estimate has been submitted of the value of the machinery at the time plaintiff repossessed it.

In this action plaintiff, seeks to recover the remainder of the purchase .price plus interest. Plaintiff now moves for an order allowing it to take possession of and sell, prior to trial on the merits, the two pieces of used- machinery that were identified as collateral in the security agreement.

## II. What Law Applies

The choice of applicable law does not clearly emerge from the pleadings. The collateral of which plaintiff seeks possession is in the Territory. The security agreement, apparently drafted by plaintiff, was executed in Hawaii but invokes the protections afforded creditors by the Western Samoa Commercial Code. A "continuing guarantee" of the debt purports to be governed by the laws of Hawaii. Hawaii has adopted the Uniform Commercial Code sections; American Samoa has not. The Western Samoa Code is not immediately available and the parties' submitted materials are devoid of citation to it. In the absence of evidence that foreign law differs from local law, courts assume that it does not.. Consequently, for the purposes of this motion we must apply either the provisions of the Uniform Commercial Code or the common law of secured transactions as applicable in American Samoa. Since our ruling on this motion would be the same whether we were to apply the Uniform Commercial Code or the principles of the common law of secured transactions, we need not decide at this time which body of law applies.

## III. Cumulative Remedies Under the UCC and at Common Law

A creditor's remedies on default are itemized in Part Five of Article Nine of the Uniform Commercial Code. The secured creditor "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." U.C.C. § 9-501(1). He may also. repossess the goods subject to the security interest and resell them in any commercially reasonable manner, applying the proceeds to the

8

debt.  U.C.C. § 9-503-04.  Or he may retain the goods in satisfaction of the debt.  U.C.C. § 9-505(2).  Section 9-504 permits the recovery of any deficiency after resale, absent creditor misbehavior in repossession and resale.

Plaintiff's conduct amounts to a melange of the above alternatives.  It has peaceably repossessed the equipment but has not attempted resale.  Nor, however, does it consider its retention to satisfy the debt.  Rather, it seeks judicial recourse, pressing a claim for (1) the entire debt less the down payment; (2) interest; and (3) the right to repossess the additional collateral notwithstanding (4) its retention of the machinery at the heart of the sale.

Section 9.501(1) of the U.C.C. provides that "[t]he rights and remedies referred to in this subsection are cumulative." (The subsection refers to all the remedies discussed above.). The Code thus sought to overrule prior judicial precedents to the effect that a secured creditor's first attempted remedy would be his only one. The leading commentary on the Code emphasizes, however, that the language of this subsection should not be construed beyond its purpose to allow unfair or commercially unreasonable conduct on the part of creditors:

> The remedies may be "cumulative," but at some point the secured creditor must choose which remedy he will utilize and pursue the route to fruition. In other words, a secured creditor may first attempt to enforce his rights by one method and if that proves unsuccessful follow another one, but he should not be permitted to harass the debtor by simultaneously pursuing two or more of the several avenues of attack open to him. Neither case law nor the language of 9.501 authorizes a "double barreled" attack upon the debtor.

J: White & R. Summers, Uniform Commercial Code § 26-4 at 1093-94 (2d ed. 1980). This view has been accepted by courts in cases similar to the one before us.

In <u>Ayares-Eisenberg Perrine Datsun, Inc., v. Sun Bank of Miami</u>, 455 So. 2d 525 (Fla. App. 1984),

9

defendant had defaulted on a loan for the purchase of a computer. Two officers of the company personally agreed to guarantee the debt. Upon default, plaintiff repossessed the computer and notified defendant that the computer would be resold by private sale. Eight months later, however, plaintiff instituted an action to recover the entire debt. One month after that, ostensibly unable to find a buyer, plaintiff gave the computer to a nonprofit organization without notifying the defendant. The court reversed the trial court order granting plaintiff's motion for summary judgment. Relying on White & Summers, the court held that plaintiff's action directly upon the note was precluded until and unless plaintiff could prove it had fulfilled the statutory requirements with respect to the commercially reasonable disposition of collateral.

In _Michigan Nat'l. Bank v. Marston_, 185 N.W. 2d 47 (Mich. App. 1970), the court held that a secured creditor could maintain an action on a debt even though it held title to the repossessed but unsold automobile securing the debt. Possession of the certificate of title was held not to constitute an election of remedy, because the automobile itself was in the possession of a garageman who held it subject to a mechanic's lien. In order to repossess the car itself the creditor would have had to pay the garageman, thus augmenting the debt. The court also held, however, that the creditor nevertheless owed certain duties to the debtor:

> It would be unfair to allow a creditor to deprive the debtor of the possession and use of the collateral for an unreasonable length of time and not apply the asset or the proceeds from its sale toward liquidation of the debt. Moveover, it would be equally unfair to allow a creditor to take possession at all, if the creditor never intended to dispose of the security. For during the period that the debtor is deprived of possession he may have been able to make profitable use of the asset or may have gone to far greater lengths than the creditor to sell. Once a creditor has possession he must act in a commercially reasonable manner toward sale, lease, proposed retention where permissible, or other disposition. If such disposition is not

10

> feasible, the asset must be returned,
> still subject, of course, to the
> creditor's security interest. To the
> extent the creditor's inaction results in
> injury tó the debtor, the debtor has a
> right of recovery.

185 N.W.2d at 51 (citations omitted). The bank's initial act, repossession, was held not to constitute an election of remedy. Moreover, because of the mechanic's lien, the bank was not required to resell the car. It could not, however, repossess the collateral and leave it in limbo while maintaining an action on the debt. The court indicated that if the bank chose not to get possession of the car and resell it, it would have to return the title documents to the debtor. Id. at 51 n.4. See also Appeal of Copeland, 531 F.2d 1195, 1207 (3d Cir. 1976) (referring to "the Code's mandate that an effective election to retain the collateral results in a complete discharge of the underlying obligation.")

The Uniform Commercial Code and the cases applying it, in other words, seem to prohibit the indefinite retention of repossessed collateral contemporaneously with an action on the debt. The same result would have obtained under the common law principles that predated the enactment of the Code. See Bradford v. Lindsay Chevrolet Co., 161 S.E. 2d 904 (Ga. App. 1968) (At common law the repossession of collateral securing a conditional sales contract, and retention without resale or excuse for not reselling and without making a demand for payment until suit, constituted "a rescission and satisfaction of the contract" precluding further recovery thereon.); In re Orpheum Circuit, Inc., 23 F. Supp. 727 (S.D.N.Y.), aff'd, 97 F.2d 1011 (2d Cir. 1938); Zazzaro v. Colonial Acceptance Corp., 167 A. 734 (Conn. 1933); Annot., 49 A.L.R. 2d 15, 25, § 4 (1956) (discussing cases recognizing that a repossessing seller could not recover deficiencies under the sales contract in the absence of a resale).

The pre-Code common law in many jurisdictions treated plaintiffs attempting more than one remedy even more strictly. Under the "election of remedies" rule a secured creditor in these jurisdictions could choose but one of his available remedies, whether or not cumulative remedies would have been fair and reasonable in the particular

11

circumstances. See, e.g., Strehlow v. McLeod, 117 N.W. 525 (N.D. 1908); Wilmore v. Mintz, 95 P. 536 (Colo. 1908). We are inclined to believe that this rule is wrong and that a creditor should be permitted to pursue more than one remedy provided that such conduct is commercially reasonable and does not constitute harassment. We need not reach this question, however, in order to rule on the motion now before us, for even under the more liberal provisions of the Uniform Commercial Code the plaintiff's request for pre-judgment seizure of the additional collateral would be denied.

### IV. Conclusion

In order to grant plaintiff's motion we would be required to believe all of the following propositions:

1) That defendant Reid's testimony that the plaintiff agreed to accept the machinery (plus as much of the $80,000 down payment as was necessary to pay the expenses it had incurred) in satisfaction of the purchase price was either perjury or the product of his imagination.

Plaintiff has produced no direct evidence on this point. The fact that one of plaintiff's officers wrote a demand letter several months later suggests --- as does, for that matter, the fact that this suit has been filed --- that plaintiff must have a different version of the transaction in which the machinery was returned. At this point, however, Reid's testimony is the only direct evidence of that transaction. Even if we assume that plaintiff's letter (described in note 1 supra) was sent and received and that the officer who sent it was fully informed about all discussions that other officers of the plaintiff corporation had with the defendants, we cannot tell from the letter exactly what plaintiff's version is. We do not know, for instance, whether plaintiff denies that it made any agreement at all with defendants concerning the return of the machinery or simply disagrees with defendants about the legal effects of such an agreement.

2) That defendants' other principal defense on the merits of the action --- that they were never in default because the action of the new Western Samoa government constituted force majeure excusing nonperformance --- is without merit.

12

We are reasonably certain that we do agree with plaintiff on this proposition, although the issue has not yet been briefed or argued by either side.

3) That defendants paid a great deal more for the machinery than anyone else would have been willing to pay for it.

At the time plaintiff repossessed the machinery, it had never been used or even possessed by defendants, and the plaintiff had $80,000 of the defendants' money in addition to the machinery. In order for the plaintiffs to have the right to seize additional thousands of dollars worth of machinery, it must appear that they have not been fully compensated by the two remedies --- repossession of the machinery and the retention of the down payment --- already pursued. In the absence of any direct evidence of the fair market value of the machinery we are inclined to believe that it was worth some amount within $80,000 of the purchase price. We have been presented with no evidence of what the plaintiffs' shipping costs and other expenses were. Plaintiff's estimate that the machinery itself was worth only $90,000 after incurring serious damage from exposure to the elements for a year by the plaintiff's agents says very little about what it was worth when defendants surrendered it.

4) The conduct of plaintiff with regard to the repossessed machinery --- moving it from Western Samoa to American Samoa and making occasional informal inquiries about whether anyone in American Samoa wants to buy it --- constitute commercially reasonable efforts to resell the machinery. (If not, plaintiffs' possession of the machinery for over a year would amount to a constructive retention in satisfaction of the debt, even in the absence of a specific agreement to this effect. See the authorities cited in Part III, supra.)

Although we have not had the benefit of briefing, argument, or expert testimony on this point, the evidence we do have (i.e., the facts of the transaction on which this action is based) suggests that the market for such machinery as this is specialized and international rather than general and local. Commercially reasonable efforts to sell it would presumably have included, for

13

instance, advertisements in trade journals outside of American Samoa.

Although plaintiff may produce evidence sufficient to enable it to prevail on all these issues at trial, on the present state of the record it loses on three out of four.

We wish to emphasize that it is not our intention to penalize the plaintiff for seeking judicial enforcement of what it believes to be its rights under the contract rather than resorting to self-help. Nor do we believe this to be the effect of our decision today. The standards we have applied in ruling on this motion are the very standards we would apply if a debtor were suing to enjoin a creditor from seizing collateral or to recover the collateral after the creditor had seized it. Contractual language giving a creditor the right to seize collateral without legal process, however helpful it may be as a defense against a charge of conversion or grand larceny, does not foreclose judicial inquiry into such questions as whether a person whose possessions are being seized really owes the money whose repayment the seizure is supposed to secure.

## V. Order

The motion for an order of repossession and sale of the additional collateral pending trial is denied. The temporary restraining order, enjoining defendants not to move, alienate, dismantle, or encumber the property, will continue in force as a preliminary injunction pending the outcome of these proceedings.