THE PEOPLE v. SILAS BARKELOW, JOHN K. ARCHER AND JAMES H. CLOSE.

*Information for Conspiracy to Cheat and Defraud.*

An information charged a conspiracy to cheat and defraud certain persons by false pretenses and by certain other means, not in themselves necessarily criminal, but it did not show which of the victims of the fraud, if either, was to be defrauded by false pretenses. *Held* bad because of the ambiguity, and because, when means are alleged that may create a crime, though in themselves they fall outside of any legal definition of one, the information must show just what they are, so that the court may ascertain what crime they create.

Exceptions before judgment from Oakland. Submitted October 16. Decided October 23.

CRIMINAL INFORMATION FOR CONSPIRACY to cheat and defraud. The facts are sufficiently shown in the opinion.

Attorney General *Otto Kirchner* on brief for The People.

. *H. C. Wisner* and *G. V. N. Lothrop* on brief for respondents. An information for conspiracy to defraud is bad if it does not show unlawful means to be used. *Com. v. Prius*, 9 Gray, 127; *State v. Burnham*, 15 N. H., 396; and where the object of the conspiracy is lawful, the information is bad if it does not show a combination to use unlawful means. *People v. Marion*, 28 Mich., 257; *Burson v. Huntington*, 21 Mich., 432.

CAMPBELL, J. In this case defendants were convicted of conspiracy, and the case comes up on exceptions. The Attorney General does not dispute the existence of errors, but as the case must go back with instructions we have deemed it proper to hear argument.

The court below, while expressing an opinion that the information, if tested by the rule in *Alderman v. People*, 4 Mich., 414, would be bad, maintained it as good on the supposition that the rule had been changed in *People v. Clark*, 10 Mich., 310.

The latter case was not designed to disturb the former decision, and was decided in express recognition of its principles. In *Alderman's* case it was held the information must affirmatively and clearly show what things agreed to be done under the conspiracy were unlawful, whether as ends or means, and decided that the facts set forth in that record did not make out of necessity a design to do any criminal wrong.

In *Clark's* case the conspiracy was averred to have been "by divers false pretenses, subtle means and devices to obtain and acquire to themselves of and from one John M. Whelpley a sum of money, to wit, the sum of ten dollars, of the moneys of said John M. Whelpley, and to cheat and defraud him, the said John M. Whelpley, thereof." And they were averred to have thereby obtained from him two pieces of money of five dollars each,—an overt act being so shown in pursuance of the conspiracy.

This information was held good as showing a conspiracy to commit a single statutory crime laid in the precise language of the statute. And it was held that the means or specific pretenses need not be set forth because it was quite possible that they might have conspired to use any means of deceit which they might find available, and not have agreed on any specific falsehoods beforehand. This ruling was in conformity with well settled rules laid down in several authorities, and approved by the court of Queen's Bench under Lord Tenterden and Lord Denman, in *Rex v. Gill*, 2 B. & Ald., 205; and *Reg. v. Gompertz*, 9 Q. B., 824.

In the present case there were five counts, of which only the fourth and fifth were supposed to be legally valid. Neither of those lays a conspiracy to commit any specific crime, but both aver a design to use means some of which were within the statute of false pretenses and some not, to cheat and defraud. No other crime was set forth, and the intent to cheat and defraud was not confined to a single person or to two persons jointly, but to two persons severally. As the facts are set forth it is impossible to deduce from the information whether either, or if so, which of the persons named was to be defrauded by false pretenses. The cheating and defrauding were to be done by divers false pretenses, and subtle means and devices, "and by other unlawful, illegal, dishonest, corrupt, and indirect means and devices." Now all of these except false pretenses may fall outside of any legal definition of a crime, and if they may be of such a nature as under particular circumstances to create a crime it must be shown just what they are in order that the court on reading the information can ascertain what crime they create. This was the defect in the *Alderman* case. The facts averred did not of necessity and absolutely amount to a crime—whether upon such testimony under a proper allegation a jury might or might not have inferred one. Here no facts are set out, and while it may be held that one or the other person named was to be defrauded by false pretenses, it does not appear which of them was, and the charge is ambiguous. The last count names no victims at all, but refers the design to a purpose

37 MICH.—58.

to defraud divers of the citizens of the township of Farmington and of the county of Oakland.

There is no class of cases where defendants are better entitled to the protection of the law against vague charges than where they are charged with conspiracy. The course of legal experience has shown this to have been a familiar resort to catch innocent persons, by throwing a drag net of vague charges, and resorting to suspicions and prejudices to induce juries to convict persons who find it impossible to escape the malicious insinuations of false accusers. Titus Oates' plot has been a warning to all courts and jurists not to encourage any looseness in charges which in exciting times juries and communities are only too ready to catch at to punish those who are unfortunate enough to be suspected.

The facts in the present case are not such as to show the injustice of the strict rule. The defendants certainly do not appear in an enviable light, and are probably dishonest swindlers. But this does not render them responsible for crimes not charged and proved against them. The proof is very slender if there is any proof that they obtained money by false pretenses. It indicates that they made promises which they did not mean to keep, and partly by this and partly by flattery and the other cunning devices of sharpers induced people to order what they did not want and to trust to their promises not to hold them on such orders. It is not surprising that a jury with such culprits before it, should convict them without any very close attention to law or facts. But this mode of doing justice is not favored in law, and needs no encouragement.

We think the information fatally defective so that no judgment can be given upon it. It must be certified to the circuit court that no judgment should be entered against the respondents but that judgment should be arrested and the prisoners discharged.

As there can be no new trial we need not pass upon the rulings.

COOLEY, C. J., and GRAVES, J., concurred.

MARSTON, J., did not sit in this case.