HALL *v.* PROCTOR.

1. APPEAL AND ERROR—SUPREME COURT NOT TRIER OF FACTS— WILL DETERMINE IF VERDICT IS AGAINST WEIGHT OF EVIDENCE.

Although the Supreme Court is not the trier of the facts, it is its duty, under the statute (3 Comp. Laws 1915, § 12635), when the question is properly presented, to examine the testimony and determine whether the verdict is "manifestly against the clear weight of the evidence."

2. VENDOR AND PURCHASER—RESCISSION—FRAUD—WEIGHT OF EVIDENCE.

In an action by the vendees in a land contract for the sale of a farm for the down payment after rescission on the ground of fraud, where the misrepresentations relied on as to the nature of the soil were denied by defendants, the preponderance of the evidence supporting such denial, *held*, not sufficient to justify reversal of a verdict for plaintiffs.

On right of purchaser to rely on representations by vendor as to quality or condition of soil, see note in L. R. A. 1917C, 273.

3. SAME—SURRENDER OF LAND CONTRACT—ACCEPTANCE.

> To make a voluntary surrender on the part of the vendees in a land contract a termination of their rights under it, it must have been so surrendered by them and accepted by the vendor.

4. SAME—ABANDONMENT BY VENDEES—ACQUIESCENCE BY VENDOR.

> If what was said and done by the vendees amounted to an abandonment, the vendor might assent thereto and treat the contract as at an end, or he could stand upon the contract, refusing his assent to vendees' efforts to become relieved therefrom; but he must choose one or the other.

5. SAME—ABANDONMENT—RESCISSION—INTENT.

> While the abandonment of possession by the vendees and the resumption thereof by the vendor would not in itself amount to a rescission, it was a circumstance to be considered by the jury in determining whether a rescission in fact had been made; intent on the part of vendees to rescind being necessary.

6. SAME—RESCISSION—EVIDENCE—GREAT WEIGHT OF EVIDENCE.

> The finding of the jury that what was said and done by the parties amounted to a rescission of the contract by the vendees, *held*, not so contrary to the great weight of the evidence as to justify reversal.

7. SAME—SURRENDER—FRAUDS, STATUTE OF.

> It is only in unusual cases that a surrender of a contract for the purchase of land may be had other than in writing, in view of 3 Comp. Laws 1915, § 11975.

8. APPEAL AND ERROR—ERROR UNNOTICED NOT REVERSIBLE.

> In an action for the down payment after rescission of a land contract by the vendees, where the declaration counted on fraud in representing that the soil was "heavy and fertile," and plaintiffs testified that defendants said that the soil was a "dark sandy loam," an instruction by the trial court that plaintiffs' claim was that defendants represented that the soil was "a heavy black soil," although erroneous, *held*, not prejudicial, it apparently being unnoticed by either counsel or jury.

9. NEW TRIAL—DISCRETION OF COURT.

> Where plaintiffs testified without objection that the condition of the orchard was not as represented, although
> 221—Mich.—26.

the declaration contained no allegation relative thereto, and the court's attention was first called to this fact on motion for new trial, the Supreme Court will not interfere with the exercise of the discretion of the court below in denying said motion.

Error to Ottawa; Cross (Orien S.), J.    Submitted October 27, 1922.    (Docket No. 43.)    Decided December 29, 1922.

Case by James Hall and another against Harry B. Proctor and others for fraud in the sale of real estate. Judgment for plaintiffs.    Defendants bring error. Affirmed.

*Diekema, Kollen & Ten Cate* and *Louis H. Osterhous,* for appellants.

*Charles E. Misner (Fred T. Miles,* of counsel), for appellees.

SHARPE, J.    Plaintiffs sue to recover damages on their rescission of a contract for the purchase of real estate in Ottawa county.    They had verdict and judgment in the trial court.    Defendants' motion for a new trial was overruled.    Error is assigned upon the charge of the court and the denial of such motion. Plaintiffs, former residents of Nebraska, came to Grand Haven in December, 1919.    The defendant Proctor was engaged in selling real estate on commission.    The defendant Vanden Akker listed a 40-acre farm with him in January, 1920, to be sold, with certain stock and farming tools thereon, for $4,000.    Plaintiffs at Proctor's request went to see this farm, having been taken thereto by defendant Conant.    There were about 18 inches of snow on the ground at that time.    Plaintiffs claim that Proctor told them the land "was a dark sandy loam and was a fine place, and he said it was a place well worth the money."    They also claim that the defendant Vanden Akker, who was there on

the farm, told them there were two patches of strawberries, one old and one new, on the place; that there was a good orchard there of 75 or 80 trees, all Northern Spies except a few; that they could not see the soil and relied on what had been told them. A land contract was entered into on January 8th. Plaintiffs paid $1,000 down payment, the balance to be paid in installments agreed upon. The sale was subject to a mortgage of $1,600, which plaintiffs agreed to assume. A bill of sale of the personalty was also executed and delivered. Plaintiffs moved onto the farm about February 1st. Mr. Hall testified:

"Along in February some time there came a thaw and we could see what the ground was; as quick as we see it we see we had been stung. * * * We found it was just white sand. Didn't find any half acre of strawberries. * * * I found the orchard was in bad shape, from one-third to one-half the trees were dead, and the rest of them were badly diseased. Very few healthy trees in the orchard. The soil that Mr. Proctor told me about I found it wasn't there, nothing but white sand."

On February 13th, Hall wrote Proctor, asking that Vanden Akker take the place back. He made no complaint about any misrepresentations in this letter. He testified that soon after in a conversation over the telephone he told Proctor that—

"it wasn't what it was represented. He told us if we wanted, why he would sell it again for us so we told him to go ahead and sell it. * * * Then they went to work and made this sale and sold the stuff as I had told them in that letter to do."

An auction sale was had of the personalty, the notices having been signed by Vanden Akker, as proprietor. The proceeds of the sale were credited on plaintiffs' note accompanying the contract. Defendant Vanden Akker testified that after the sale of the personalty he found the premises apparently abandoned. He

went to plaintiffs' home in Grand Haven and Mr. Hall then said:

"Well I give you the contract back and I have nothing to do with it, and I says all right, Mr. Hall, then I says won't you think it over before you do it, and he says no, I won't do nothing with it any more."·

That Hall then gave him the contract and he—

"went to the bank and the bank notified Mr. Hall to pay the rest of the money, and Mr. Hall was there and throws his hands up and said he won't do nothing with it no more."

As to what then occurred Mr. Hall testified:

"I told him if he wanted the contract we would give it up as it was no good to us. We gave it to him. I think we couldn't find it that evening and he come back another evening after it."

Mrs. Hall testified:

"He wanted to know if we wouldn't give him the contract, he asked for it right out. Then my husband said yes, no good to him, so he gave him the contract."

Plaintiffs, claiming that they had rescinded the contract because of the fraudulent representations which induced their purchase, brought this action to recover the $1,000 paid. The trial court submitted the two questions to the jury, *first*, whether plaintiffs were defrauded when they entered into the contract, and, *second*, whether plaintiffs had in fact rescinded the contract. The jury found for the defendant Conant and against the other defendants in the sum of $1,062.50. Judgment was entered accordingly. Appellants moved for a new trial for the reason, among others, that the verdict was against the great weight of the evidence. This motion was denied, and they review the judgment entered by writ of error.

1. It is insisted that the verdict was against the great weight of the evidence. While we are not

"triers of the facts," it is our duty under the statute (3 Comp. Laws 1915, § 12635), when such a claim is properly presented, to examine the testimony and determine whether the verdict is "manifestly against the clear weight of the evidence." *Foster* v. *Rinz,* 202 Mich. 601.

The testimony of plaintiffs that Proctor represented the soil to be "dark sandy loam" is positive. Mr. Proctor admitted that he knew it was not. He denied saying that it was. There was other testimony tending to support the claim of plaintiffs and the denial of defendants. In our opinion there was no such preponderance supporting such denial as would justify setting aside the verdict.

Plaintiffs claim that the surrender of the contract operated as a rescission and was so understood by Vanden Akker. The defendants claim that it amounted to an abandonment and that plaintiffs' rights were terminated thereby. The plaintiffs were ignorant of legal procedure and did not secure the advice of counsel until about the time this suit was begun. It seems apparent that Mr. Vanden Akker did not accept the surrender of the contract as a termination of the rights of both parties under it. As testified to by him, he "went to the bank and the bank notified Mr. Hall to pay the rest of the money." To make a voluntary surrender on the part of the plaintiffs a termination of rights under it, it must have been so surrendered by them and accepted by Vanden Akker. If what was said and done by plaintiffs amounted to an abandonment, Vanden Akker might assent thereto and treat the contract as at an end or he could stand upon the contract, refusing his assent to plaintiffs' efforts to become relieved therefrom. He must do one or the other. His testimony is quite convincing that he chose the latter. While the abandonment of possession by the plaintiffs and the resumption

thereof by Vanden Akker would not in itself amount to a rescission, it was a circumstance to be considered by the jury in their determination as to whether a rescission, in fact, had been made. There must have been an intent on the part of the plaintiffs to rescind. It was for the jury to draw all reasonable and fair inference from what was said and done, having in mind the familiarity of the parties with legal procedure. After carefully reading the record and giving due weight to the argument of counsel, we feel constrained to hold that the finding that plaintiffs had rescinded is not so contrary to the great weight of the evidence as justifies our setting it aside.

While not discussed by counsel, we feel impelled to call attention to the fact that it is only in unusual cases, such as were pointed out in *Stevens* v. *Wakeman,* 213 Mich. 559, that a surrender of such a contract may be had other than in writing, in view of the provision in section 11975, 3 Comp. Laws 1915. See *Waller* v. *Lieberman,* 214 Mich. 428.

2. The declaration counted on defendants' misrepresentation as to the character of the soil. It alleged that defendants represented that—

"the soil was heavy and was fertile and would grow and produce large crops of hay, wheat, oats, potatoes, corn, etc."

Plaintiffs testified that Proctor said the soil was "a dark sandy loam and was a fine place." In his charge to the jury the trial court stated that the claim of the plaintiffs was that defendants represented that the soil was "a heavy black soil." Error is assigned upon this instruction. That the court was in error in so stating is apparent. It is also apparent that defendants' counsel, who were doubtless present at the time, did not detect the error, else the attention of the court would undoubtedly have been called to it. The char-

acter of the soil was described by several witnesses. The representations made were several times referred to. We do not think the error complained of sufficient cause for reversal. If unnoticed by counsel, it doubtless was also by the jury. If noticed by counsel, it was their duty to call the attention of the court to it. *Randolph* v. *Railway*, 213 Mich. 100, and cases cited.

3. Plaintiffs testified, without objection, that the condition of the orchard was not as represented. The declaration contained no allegation relative thereto. The attention of the court was first called to this fact on the motion for a new trial. With the discretion exercised by him in denying the motion for such reason we are not inclined to interfere.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.