In re Edward JONES, Bankrupt.

**BANK OF GADSDEN, formerly known as Gadsden Mall Bank, Plaintiff,**

v.

**Edward JONES, Bankrupt, Defendant.**

**Bankruptcy No. 78–03225–M.**

United States Bankruptcy Court,
N. D. Alabama.

Dec. 10, 1979.

Leon Garmon, Gadsden, Ala., for bankrupt.

Jim L. Wilson, Gadsden, Ala., for plaintiff.

## STATEMENT OF THE CASE

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

The above-styled adversary proceeding was tried before the bankruptcy judge at Gadsden, Alabama, upon the plaintiff's amended complaint and the defendant's amended answer, without the intervention of a jury. The proceedings were not noted by a court reporter but were recorded upon cassette magnetic tapes. Each party to the proceeding was represented by his legal counsel.

The defendant is the bankrupt in this case and was granted a discharge in bankruptcy on December 26, 1978. This bankruptcy case was commenced by a voluntary petition filed by the defendant on October 17, 1978, and the bankrupt's schedule of creditors was amended November 8, 1978, to include a debt to the plaintiff, stated to be in the sum of $2,200.00 and to be secured by the bankrupt's 1974 [model] Grand Prix [Pontiac automobile]. The bankrupt's original schedules of creditors did not include the plaintiff but listed four other creditors stated to have said automobile as security for debts in the respective sums of $11,000.00, $5,000.00, $2,000.00, and $850.00. The first two of those debts were stated to be secured also by a 1978 model Buick Electra automobile.

The plaintiff's amended complaint seeks, in effect, to have the Court adjudge that the debt owed to it by the bankrupt is not dischargeable in bankruptcy, and it demands judgment against the defendant in the sum of $2,754.20, plus $5,000.00 as punitive damages.

The debt in question is evidenced by a combination promissory note and security agreement which the bankrupt executed to the plaintiff on July 24, 1978. The plaintiff contends that the debt is nondischargeable because of an alleged misrepresentation by the defendant that the 1974 model Pontiac automobile was free and clear of any prior security interest and because this misrepresentation induced a loan from the plaintiff-bank to the defendant, represented by the contract dated July 24, 1978. It is apparent that the plaintiff seeks to have this Court determine that the bankrupt is liable to it for obtaining money or property by false pretenses or false representations, as stated in § 17a(2) of the Bankruptcy Act;[1] however, both parties have confused the dischargeable contractual obligation under the

---

1. Formerly, 11 U.S.C. 35a(2).

contract with the tort claim which the alleged facts would support and which constitutes a nondischargeable liability under said section of the Bankruptcy Act. Under liberal pleading practices and in the absence of any specific demand from the defendant that the proceeding be clarified, the Court finds no satisfactory reason for departing from the course of deciding the true dispute between these parties. The evidence presented at the trial consisted of the testimony of various witnesses (including the defendant) called by the plaintiff, the plaintiff's Exhibits "1" through "9", and the defendant's Exhibit "A".

## FINDINGS OF FACT

Upon a due consideration of the plaintiff's amended complaint, the defendant's amended answer, and the evidence produced at the trial, the bankruptcy judge finds the facts in this proceeding to be as hereinafter stated.

On July 24, 1978, the defendant executed and delivered to the plaintiff a contract [P. Ex. 2] which included a promissory note to pay a sum of $2,065.22, plus interest of $329.74, in 24 consecutive monthly installments of $99.79, with the first installment due on August 23, 1978. The contract showed the annual percentage rate charged by the plaintiff to the defendant to be 14.65%, and it included the creation of a security interest in the defendant's 1974 model Pontiac Grand Prix automobile, as collateral for the debt. This transaction represented a consolidation of a loan by the plaintiff to the defendant of the sum of $1,000.00, with the automobile as security, on June 25, 1978, and a prior loan by the plaintiff to the bankrupt, with the bankrupt's savings account at the plaintiff-bank, having a balance of $800.00, as security. In connection with the consolidation of the two debts, the plaintiff released the savings account, and the bankrupt withdrew all funds therefrom.

In connection with the plaintiff's loan to the bankrupt of $1,000.00, on June 25, 1978, the bankrupt produced to the plaintiff's loan officer a combination promissory note and security agreement dated September 7, 1976 [P. Ex. 1], which the defendant had given to American Credit Company of Alabama, Inc. (showing said automobile as security for a debt of $3,813.00), and which was stamped "PAID IN FULL" on September 3, 1977. With permission of the defendant, this paper was retained by the plaintiff's loan officer.

The defendant testified that the paper was produced for the purpose of furnishing the description, including the serial number, of the automobile; however, the plaintiff's loan officer testified that it was produced not only for that purpose but also to buttress the defendant's statement to her that the automobile was free and clear of any prior security interest. The defendant testified that he made no statement to the plaintiff's loan officer concerning any prior security interest in the automobile and that no inquiry in this regard was made of him.

The bankruptcy judge finds that there were at least three outstanding prior security interests in said automobile, given by the defendant as collateral for loans of money obtained by him, that the defendant falsely represented to the plaintiff's loan officer that there was no outstanding, prior security interest in said automobile given by him, and that the plaintiff's loan officer was thus misled as to the existence of prior encumbrances on the automobile.

The plaintiff did not check the defendant's credit rating with the local credit bureau but made a private check with a party who was acquainted with the defendant. The report was that the defendant's financial condition was improving from bad to good.

The plaintiff did not check the public records for prior liens filed against the automobile; but there was no evidence that any of the prior security interests had been perfected by filing a financing statement, as provided in the Alabama *Uniform Commercial Code*.[2] The plaintiff also did not perfect its security interest, which was de-

2. Code of Alabama §§ 7–9–302, 402 (1975).

feated upon an attack by the trustee in bankruptcy.[3] The plaintiff did, however, obtain a payment of $1,748.67 for loss of the loan collateral, under some type of "nonrecording insurance" which it carried. The nature of the insurance was not explained.

The payment of the bankrupt's indebtedness to American Credit Company of Alabama, Inc., which had been secured by the automobile, was made with funds borrowed by the bankrupt from his credit union, for which he gave a security interest in the automobile as collateral, on August 17, 1977.

In November 1977, the bankrupt obtained a loan from the Citizens Bank of Glencoe (Alabama), again giving a security interest in the automobile as collateral. In obtaining the loan, the bankrupt falsely stated to the bank's loan officer that the automobile was free and clear of any prior security interest and that he had paid off the credit union debt on the car.

At the time of the plaintiff's transactions with the defendant, the defendant had also given a security interest in the automobile as collateral for a loan which he had obtained from the East Gadsden Bank. The details of this loan were not established, except that the bankrupt, testified that, in connection with it, he was not asked about any prior encumbrance of the vehicle and made no mention of any.

At the time of the defendant's transactions with the plaintiff, none of his debts with the credit union or the other two banks had been satisfied. Testimony concerning the defendant's transaction with another creditor was unconvincing and is disregarded.

After the defendant had filed his bankruptcy case, he went to an Alabama Farm Bureau Insurance Company office, where he had obtained insurance on the automobile, and sought a loan on the automobile through one of its affiliates. At that time, he had made tentative arrangements to repurchase the automobile from the trustee in bankruptcy, but he was informed that his bankruptcy would prevent his obtaining the loan, although it could be made to his wife. Pursuing that course, the bankrupt obtained the loan by having a female friend forge his wife's name to the loan papers, as the owner of the automobile. The deception came to light when the defendant's wife made inquiry at the insurance office concerning a loan-payment book which she had received in the mail.

The false statement on June 25, 1978, by the defendant to the plaintiff's loan officer, to the effect that there was no outstanding security interest in the automobile given as collateral for the plaintiff's loan of $1,000 to the defendant, was known to the defendant to be false and was fraudulently made for the purpose of obtaining the loan. The falseness of the statement was not known to the plaintiff's loan officer, and the statement constituted a substantial inducement for the making of the loan, there being a substantial reliance by the plaintiff upon the false statement. There is, therefore, an outstanding liability, owing by the defendant to the plaintiff, for obtaining that money by false representations, and it is not dischargeable in bankruptcy.

On July 24, 1978, still in reliance on the defendant's prior false statement, the plaintiff consolidated the $1,000 loan with the loan prior to it, took a security interest in the automobile as collateral for the consolidated debts, released the defendant's savings account as collateral for the prior debt, and allowed the defendant to withdraw the $800 from the savings account. The defendant's fraudulent purpose continued through this transaction, and the withdrawal of the $800 created an additional nondischargeable liability from the defendant to the plaintiff for obtaining money by false pretenses or a continuing false representation.

The fact that the plaintiff carried some sort of "nonrecording insurance" and the fact that the plaintiff did not perfect its security interest in the automobile, by filing a financing statement, inject a question as

3. See Code of Alabama § 7-9-301 (1975).

to whether the plaintiff had any real concern as to whether there was any outstanding security interest in the automobile and, consequently, whether it put any real reliance upon the defendant's statement in this regard. There was no evidence to the effect that such insurance protected the plaintiff against loss with respect to prior lien holders, as contrasted with subsequent lien holders, in relation to the nonfiling of a financing statement. The plaintiff can be said to have relied upon the defendant's false representations as to prior lien holders and to have relied upon its "nonrecording insurance" as to subsequent lien holders.

### CONCLUSIONS BY THE COURT

The plaintiff's "nonrecording insurance" and the resultant insurance payment to it of the sum of $1,748.67, upon the defeat of its security interest by the trustee in bankruptcy, also raise a question as to what effect that may have upon the damages which the plaintiff may recover for the defendant's tort. The insurance payment was for loss of the collateral to the trustee in bankruptcy because of a nonfiling of a financing statement and not for parting with $1,800 in reliance upon the defendant's false pretenses or representations. It had no direct relation to the defendant's tort and would not have any effect upon the plaintiff's right to recover.

The plaintiff is entitled to a judgment against the defendant for nondischargeable liabilities, in obtaining the loan of $1,000 and in obtaining the release to him of the $800 in the savings account. It appears that the plaintiff would be entitled to interest at the legal rate of six percent,[4] upon the $1,000 from June 25, 1978, and upon the $800 from July 24, 1978. No justifying, extraordinary reason appears for awarding interest at the contractual rate of 14.65%.

As to the demand for $5,000 in punitive damages, the Court may consider the agreement to pay an attorney's fee in the event of a default in the contract. At the trial the parties' attorneys agreed that if an attorney's fee were recoverable, the amount

should be $344.79. The Court concludes that this sum is a reasonable measure of punitive damages, that it should be awarded to the plaintiff, but that no additional sum should be awarded for punitive damages.

A judgment in favor of the plaintiff and against the defendant and in accordance with the foregoing conclusions will be entered.

---

4. Code of Alabama § 8–8–1 (1975).