**In re Kraig F. STRAPKO, Debtor.**

**MIDLAND NATIONAL BANK, Plaintiff,**

**v.**

**Kraig F. STRAPKO, Defendant.**

**Bankruptcy No. 3–79–1629.**
**Adv. No. 80–0030.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Aug. 8, 1980.

David K. Hebert, St. Paul, Minn., for defendant.

Steven C. Schroer, Minneapolis, Minn., for plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

JACOB DIM, Bankruptcy Judge.

This matter came on for trial on July 2, 1980 before the Honorable Jacob Dim, Bankruptcy Judge on plaintiff's complaint to determine the dischargeability of certain debt of the defendant. David K. Hebert appeared for the defendant Kraig F. Strapko (hereafter Strapko). Steven C. Schroer appeared for the plaintiff Midland National Bank (hereafter Midland).

The Court having heard the testimony of the witnesses and considered the arguments of counsel and all the files and records herein, and being fully advised in the premises, makes the following:

## FINDINGS OF FACT

1. The defendant Strapko was employed as an insurance agent with State Farm Insurance Company. As part of his job, Strapko was authorized to take applications for financing through Midland for customers of State Farm who wished to obtain automobile loans. The agent would have the customers execute the necessary papers and then telephone the information to Midland. Midland would ultimately approve or disapprove the loan based on the information supplied by the agent, both on the telephone and when he had transmitted the loan papers and made an independent credit check, verified employment, verified income and whether applicant was overextended.

2. Through his position as an agent, Strapko obtained an automobile loan for himself. Strapko had full control over the execution of the loan papers. He was familiar, through training sessions and his work experience, with the procedures which were involved with obtaining financing through this method.

3. On or about December 11, 1978, Strapko contracted with Jerry Schoenecker (Schoenecker) owner of a concern known as Jerry's Auto Detail, Inc., to purchase a used 1975 Dodge van. The van needed substantial repairs. The purchase price of the van was $3,350.00, which was to include the necessary repairs.

4. In order to raise the necessary funds to purchase the van, Strapko made oral and written applications to Midland for an automobile loan. In the written application Strapko represented that the purchase price of the van was $4,300.00, and that he was making a $300.00 down payment. The condition of the van was never disclosed to the bank.

5. Strapko also represented to Midland that he had disclosed all debts he then owed. He failed to disclose in his application three loans totaling nearly $8,000.00. This understated his liabilities by 40%.

6. The false written statements were made knowingly, and with the intent that Midland rely on them. The representations were material and Midland reasonably relied on them to extend credit to Strapko.

7. To draw funds on Midland for the loan, Strapko executed a draft on Midland in favor of Schoenecker and Jerry's Auto Detail, Inc. in the amount of $4,000.00. The draft contained a restrictive endorsement to the effect that the sale of the van was unconditional, and that application for title would be made to show the security interest of Midland. The draft was presented to Midland and paid. Upon cashing the draft, Schoenecker kept the $3,350.00 purchase price and returned $650.00 to Strapko.

8. In fact, the sale to Strapko of the van was a conditional sale. The sale was never finalized because the repair work was never completed by Schoenecker. On or about February 10, 1979, unbenownst to Midland, the purchase price of $3,350.00 was returned to Strapko by Schoenecker with interest. This money was not returned to Midland. Transfer of title was never accomplished, and no Certificate of Title was ever issued showing the security interest of Midland.

9. Strapko made only two payments on the note before going into default on his debt to Midland. Strapko filed his bankruptcy petition on November 26, 1979.

10. The amount due and owing to Midland in $4,305.18 as of July 2, 1980, together with interest accruing at the rate of $1.22 a day.

## CONCLUSIONS OF LAW

1. A debt may be held to be nondischargeable upon the satisfaction of the requirements set forth in 11 U.S.C. § 523(a)(2), which provides as follows:

§ 523. Exceptions to discharge.

(a) A Discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt . . .

   *    *    *    *    *    *

(2) for obtaining money, property, services or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and,

(iv) that the debtor caused to be made or published with intent to deceive

■ 2. Strapko's false statements and omissions made regarding the purchase price, value, and condition of the Dodge van for which credit was extended by Midland constitute false pretenses or fraud under the Bankruptcy Code. *Michigan National Bank v. Marston*, 29 Mich.App. 99, 185 N.W.2d 47 (1971).

■ 3. Strapko's false statements regarding the existence and attachment of a valid security interest in the Dodge van which was to be collateral for the Midland loan constitute false pretenses or fraud under the Bankruptcy Code. *Bank of Gadsden v. Jones*, 2 B.R. 46 (D.Ala.1979).

■ 4. Strapko's failure to list material outstanding debts in the loan application, and his intentionally false misrepresentation that all debts had been listed was a material misrepresentation of his financial condition. *Barrett v. Beneficial Consumer Discount Co.*, 2 B.R. 296 (E.D.Pa.1980).

■ 5. Strapko's acceptance of the $650.00 kickback from Schoenecker, and his failure to return the refunded loan proceeds after February 10, 1979 constitute a willful conversion of Midland's funds, and an obtaining of those funds by false pretenses or fraud. *Bennett v. W. T. Grant Co.*, 481 F.2d 664 (4th Cir. 1973).

6. Midland reasonably relied on Strapko's materially false statements. *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979).

7. Strapko made the false statements and omissions with the intent to deceive Midland. *Cunningham v. Elco Distributors*, 189 F.2d 87 (6th Cir. 1951).

## ORDER FOR JUDGMENT

Based on the foregoing Findings of Fact and Conclusions of Law:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. That Kraig F. Strapko's debt to Midland National Bank shall be, and hereby is, declared non-dischargeable in bankruptcy by reason of 11 U.S.C. § 523(a)(2).

2. That Midland National Bank have judgment against Kraig F. Strapko in the amount of $4,305.18, together with interest accruing at the rate of $1.22 per day from July 2, 1980, to the date of judgment.

LET JUDGMENT BE ENTERED ACCORDINGLY.